May it please the Court, John Walsh for the appellant, Majestic Blue Fisheries, LLC. I would like to reserve five minutes for rebuttal, if I could. You came from a long way, right, Mr. Walsh? I did. I'm glad I'm here. It's an honor and privilege to be here. Majestic Blue, we sort of weeded the garden in this case by dismissing the limitation appeal, and basically we're down to two issues. And the first issue is the award of prejudgment interest on the damages, both past and future damages. And the second issue is that we're seeking credit for the settlement that was entered into by Plaintiff and Don Long. The prejudgment interest issue has actually two sub-issues. The first sub-issue is whether the plaintiff waived the right to prejudgment interest by not submitting the issue to the jury and asking for a separation from the jury of the past losses from the future losses. And the second sub-issue is whether the district court abused its discretion in awarding 6% in prejudgment interest under the Guam law, post-judgment interest law. The plaintiff argues that the case was tried in admiralty and law, and that even though the jury tried all the issues, the judge could award prejudgment interest without any breakdown of past losses and future losses. In other words, some issues are tried to the jury and some issues are tried to the judge, but who makes that determination? Under Federal Rule of Civil Procedure 38, unless you specify the issues that are going to be tried to a jury, all issues are to be tried to the jury. What did the pretrial conference order say?  There was no reservation of any issue to the judge. And the case was tried on the basis of a pretrial order. Nothing during the trial was mentioned about prejudgment interest. And up to the jury's verdict, the jury was discharged. And then the prejudgment interest issue came up. And as a matter of fact, Magistrate Judge Manbusen held that as to the Jones Act survival damages, the plaintiff had waived its right to prejudgment interest. And I think implicit in that holding was that the judge felt that he had the right under the Death and High Seas Act to make an award of prejudgment interest on the wrongful death damages. But that's not the case. Either he sits in admiralty or he sits in the law. And if he sits in the law, the jury has to decide all issues and prejudgment. I thought the pretrial conference order said something about the court was it sitting in its admiralty jurisdiction as well. Well, there may have been a discussion as to that, Judge, but you're either in one or the other. And, again, I go back to Federal Rule 38. If any issue is going to be decided by the judge, it has to be specified up front. So from your perspective, how should this have been handled? Well, if the plaintiff- If he's in admiralty, he is entitled to prejudgment. Correct. But if it's in admiralty, then the judge- The general notion that they get prejudgment interest. Correct. That's correct. And it's within the court's discretion. But if either the case was going to be tried non-jury, in which case in admiralty, then prejudgment interest could be awarded. Or if it's going to be tried at law, then the prejudgment interest should go to the jury. And at a minimum, at a minimum, we should find out what the past losses were and what the future losses were. Because when the economist gave his testimony, and the jury followed the economist's recommendations to the T, $1.6 million on the loss of support, $1.4 million on losses of services to the penny. And so, but the economist only gave a lump sum award for both past and future losses. And he discounted the future losses to the time of trial. So there's no doubt about it that future losses were awarded and prejudgment interest was awarded on future losses, which is contrary to this court's decision in Columbia Brickworks. Let me ask you this. You know, certainly I'm not an expert in these statutory schemes. Very few people are. Jones Act, Admiralty Law, DOSHA, Death on the High Seas Act. Is there any difference between the DOSHA and the Jones Act? There is. And we could go for a long time with that. Or General Admiralty? Well, under the Death on the High Seas Act, there's a difference in the class of beneficiaries. The Death on the High Seas Act allows the personal representative to bring a lawsuit on behalf of the spouse, the children, mom and dad, and any dependent relative. The Jones Act, by contrast, has classes of beneficiaries to the exclusion of other classes, so that if there's a spouse and a child, no one else recovers. And that's what we have here. And in my mind, and I'm going against Ninth Circuit precedent here, I think the widow should have had to choose between Jones Act and the Death on the High Seas Act. But there is a Ninth Circuit case that says, no, she doesn't. She gets to go on both. She can go on both. I don't know how. You know, heaven forbid that there's some other beneficiary that tries to claim under the Death on the High Seas Act because she would really want this under the Jones Act for herself and her children. But under the Ninth Circuit precedent, I think the case is Peace, P-E-A-C-E, in 1969, said, no, both can be tried together. So we haven't had any problems since 1969, so I guess we can do it that way. In any event, I mean, this case, it's a waiver. I mean, and the reason it's a waiver, we relied on the waiver, because if we had noticed, if we had noticed that the case was going to be, that prejudgment interest was going to be requested, we would have asked the court and the jury to separate pass from future losses instead of just having one lump sum of both. So we were denied that opportunity. So you're saying that at the time that the pretrial conference was settled, you thought that there would be no request for prejudgment interest based on opposing counsel's representations during the pretrial conference stage? I didn't try the case, but that is my understanding, that there was no, the impression was that no prejudgment interest was being requested. And that impression was based on? It was a Jones Act case. And under the Jones Act case, it was. But specifically, when we go back to the record to follow up on that claim that counsel led you to rely on the fact that no prejudgment interest would be requested, what document do we look at, the pretrial conference order? Pretrial order. And also, Judge, I think, I mean, under Rule 38, Federal Rule of Civil Procedure 38, all issues had to go to the jury. So the issue of all prejudgment issues . . . So you don't even get to our case law like Glynn? You just rely on the FRCP? No, we do get the Glynn judge. I mean, Glynn said that the no prejudgment interest could be awarded by the court because the court was not sitting in admiralty. Well, that's not quite what they said. But they said that, at least on the facts of that case, that was a Jones Act and general maritime law, right? Correct. They didn't have a DOSHA claim in that case. That's correct, Your Honor. But I don't get the difference between DOSHA and a personal injury case with unseated weapons. They're both admiralty-type cases. DOSHA only gives the right to deceased seamen's relatives to claim for unseated weapons. So it's the same remedy. Glynn doesn't go into the rationale for that. It just says that's the rule because other circuits have followed it. Correct. And, therefore, that's what we do. And I guess if one looks to the source of explaining it, it's the best we've been able to find is the First Circuit. Yeah, Robinson v. Pocahontas, I think, is the case in the First Circuit. Okay. So what is the rationale for that? Well, the rationale— Let me tell you the question I'd like you to address because there's a Supreme Court case, Austern Act,  because prejudgment interest is to deal with what the victim, if you will, the widow in this case, has had to go through before she gets her judgment. And there's an economic cost-benefit the defense goes through. We get the use of the money while we're defending this case, and so it may cost us money to do it. But, meanwhile, we're able to go out and use the money we don't have to pay. So there's an opportunity. I'm not saying that's happened here. I'm just saying there's an opportunity for the court to decide in the weather and then the amount of prejudgment interest to award what the conduct of the defendant has been, whether they've dragged the proceedings out, they've fought every step of the way, and so on. How is a jury supposed to consider that? Well, what should have happened, Your Honors, the economist should have testified as to what the losses were in the past for which prejudgment interest should be awarded as of the date of trial. In other words, what money was the widow out from the date of death until the date of trial? But as to future losses that have not been incurred, prejudgment interest should not be awarded. That would be unfair. That would be money that still is not due to the widow. It's been discounted to the date of trial, but it hasn't been lost yet, and she would not have had that money yet. So you're saying the damage award in this case was past and future, not differentiated, but that's the bulk of, that's the range of the damage award that was made, and when the district court applied the prejudgment interest, it applied it as against the entire damage award? Correct. Is that it? That's what the judge did, and he cited it. So you're saying that, therefore, the prejudgment interest also wound up as being part of post-judgment interest? Correct. Well, no, I'm saying that the prejudgment interest was on future losses that had not yet been incurred. I'd like to get to the settlement credit issue, if I could. Sure, go ahead. Don't worry. If we take up your time on questions, we're not so ruthless if we don't give you. I'm looking at the clock, Judge. Well, he's the boss. Well, give me the ample time. Judge, on the McCormick v. Ann Clyde is, of course, the case that we have to analyze here, and it involves a case of joint tort feasors. This is not a case of joint tort feasors. This is a case where there is a combination of being a joint tort feasor and a vicariously liable defendant with the co-defendant. And the problem is that the plaintiff argues that, well, you should have argued apportionment to the jury, even though Dong Wan had settled the case and was not there at the time of the trial. You had an empty chair you could blame on. But we didn't have an empty chair that we could blame on because the judge had already ruled that Dong Wan's negligence was imputed to Majestic Blue. So we were in a catch-22. Did you offer instructions, though? No. We withdrew instructions because no apportionment could be made. It was futile to offer any instructions. When they first went in, they offered instructions, but then they realized that if Majestic Blue was going to be responsible for Dong Wan's negligence, all the plaintiff had to do was tell the jury that and say, you don't need to apportion here, ladies and gentlemen of the jury. A hundred percent, Majestic Blue is liable for its own negligence and for Dong Wan's negligence. So there's no effective right. And you cannot waive a right you don't have. And that's what the plaintiff is arguing, that we waived a right that we didn't have. Was the judge proposing to tell the jury that Dong Wan was in liability of Majestic, was attributable to Dong Wan? Well, it's hard to follow the jury instructions a little bit in the transcript, but, I mean, when it came out in the wash, there was no instruction whatsoever to the jury about Dong Wan that I could see. And that's appropriate. But I'm curious whether or not the judge said, well, I'm not going to give that instruction because Dong Wan is responsible for Majestic's negligence. I don't recall that discussion in the record. I recall – I don't think it was there. No, I don't think it was there. I think sensibly there could be no instruction to the jury on apportionment when – There's no harm in asking. True, but, I mean, it's also futile. The law doesn't require futile things. No, but it's not clear to me exactly what the judge was doing or had done. I mean, I didn't quite see it the way you just explained it. Well, I think the judge said it wasn't an issue. There's just no issue of apportionment, and there wasn't. There can't be an issue of apportionment if we're going to be 100 percent responsible for Dong Wan's negligence. It can't be apportioned. This court has ruled that McDermott doesn't apply to certain situations. One case was a CERCLA case, and this court said that, I think it was AmeriPride Services versus Texas Eastern Overseas, that the court – the district court had discretion to apply any apportionment they thought was equitable. And there's another case, Evano, E-V-A-N-O-W versus MV Neptune, where the court applied pro tanto credit in a salvage contract case. So it's not a golden rule. The district court, in its order, viewed this very much as a strategic decision, not to submit the question to the jury. I'm looking at the order here where it says Majestic Blue – this is Page – ER 13 made the strategic decision not to pursue the strategy of submitting this question to the jury, that you had sufficient time following the settlement with Dong Wan to adjust the case, but chose not to do so, so now it can't be heard to complain about it. How do you respond to that? Well, yes, every decision in trial is a strategic decision. And the strategy was, if we went in and argued proportionate fault to the jury, it just rebounds to us. It makes us look even worse. I mean, how can we – of course we can complain. We can complain because the judge was offering to catch 22. Go and argue apportionment, but guess what? You're responsible for Dong Wan's negligence. That's – the only word I can use for it is absurd. But the question maybe we all have, was there any discussion of that dilemma before the court so that the court could work out a way to get the jury to decide how much damage was attributable to Dong Wan? But even if you had the discussion, Judge, the court had ruled that if – How did the jury know that? The jury didn't know that. So the jury is asked to say, what are the damages and how would you apportion fault between Majestic and Dong Wan? They could have – Okay, they could do that. They could do that, but then they would be told that Dong Wan – Majestic Blue was responsible for Dong Wan's negligence. Why would they be told that? Who would tell them? The judge already did that. The judge read his findings of fact and conclusions of law at the beginning of trial and said Majestic Blue is responsible for Dong Wan's negligence. And it was part of the discussions in the instruction conference. The other point I want to make is that the proportion of fault rule is not a rigid, fixed rule. And the Seventh Circuit actually has held that it doesn't apply in Jones Act – I'm sorry, in FILA cases. And, of course, as the Court knows, the Jones Act incorporates FILA, the Federal Employees' Liability Act. So I'm not urging the Court to adopt that, but I'm just saying that there's no rigid rule and it would have been much better to apply the pro tanto or settlement credit rule. Thank the Court very much.  I'll give you a minute for rebuttal. Thank you. Good morning, Your Honors. May it please the Court. I'm Scott Wagner, representing Amy Hill, appellees in this matter,  why the Court was allowed to determine entitlement and rate with respect to prejudgment interest, two, why the Court did not abuse its discretion in applying the rate of 6% for prejudgment interest, and three, why Majestic Blue, as shipowner, was not entitled to a credit for the settling defendant, Dong Wan. You've come a long way, too. I have, Your Honor. Yes, I mentioned. I wonder who traveled the farthest. Well, we came from the same time zone, I think. But it's a pleasure to appear before the Court. I don't know if the Court knows, but today is actually the anniversary of the sinking of the vessel to the date seven years. We appear here today, Your Honors, and mentioning the three points previously in our response brief, which we think merit your attention. But we believe the utterly decisive point that we would like to highlight today in oral argument that really permeates through the three issues that are before the Court on appeal is the inclusion of the DOSA statutory cause of action in this case, which we think is the clinching point for all three of the issues. First, why the Court was allowed and entitled to hear the pre-judgment interest issue. Quite frankly, I think there was some issue before about whether they knew that the pre-judgment interest was going to be put before the Court. I would direct this Court to the trial brief submitted by the plaintiff in this case. It appears at docket entry 420, page 29 of 35. It's section 5, Your Honors. And it specifically talks about the district court, not the jury, the district court, having discretion to award pre-judgment interest. It talks about the issue. I would like to note to the Court that Majestic Blue Fisheries, in its trial brief, did not mention pre-judgment interest at all. After the trial brief was submitted, we then had a joint pre-trial order, or a joint pre-trial stipulation, proposed order, that ultimately was memorialized by the Court in its pre-trial order, under which the parties stipulated that the case would be proceeding in admiralty. That allowed the judge to have the discretion to go back and determine both entitlement and rate post-trial. That was a stipulation done by the parties. I think that makes the issue markedly different from a situation where you have a Jones Act case and a plaintiff is compelled to a mutually exclusive decision of either proceeding at law or in admiralty. The presence of the DOSA claim here permeates this issue and allows the Court to reserve its discretion on both entitlement and rate as it relates to pre-judgment interest. It's very clear that this issue was before the Court in terms of the trial brief. It's very clear that the Court reserved its right in admiralty to make that determination through a joint pre-trial stipulation and order. It's also very clear that the plaintiff specifically did not submit this to the jury. This is not a situation where you have the jury considering an issue or making the determination. Was there any discussion about Lynn Chase? Can I just get a question? You cited the pre-trial order. What page? Can you give us the page size? The pre-trial order I have here, I believe it's SER 82. I think it's point. I'm not sure exactly what point, but I can tell the Court that the first section specifically stipulates to admiralty and the Court's sitting in admiralty, and it also stipulates that there are pre-judgment issues in there. Yes, I'm looking at SER 57. Okay, 57, yes. And that says jurisdiction is proper under 28 U.S.C. 1333. That is the admiralty jurisdiction, Your Honor, yes. So that's what you're relying on. Yes, I am, Your Honor. Okay. And further down the road in the facts section, I believe at the very end of the facts section, it talks about pre-judgment interest. And in the trial brief, Section 5 of the plaintiffs, we talked about the district court having the discretion. Majestic Blue never objected or never made that an issue before the court. Before I move on, I think Judge Pyatt. I just had a question. Was there any discussion about how our opinion in Glynn, is it Glynn? Yes. What was happening at the district court? There was not a discussion at the time. In fact, Majestic Blue never raised the issue in its trial brief and never put the issue before the court. There was no discussion about it. But Glynn, I think, is markedly different based on that Jones Act principle where a plaintiff in a solely a Jones Act or general maritime case has to make a mutually exclusive election. Do I proceed at law or do I proceed at admiralty? In Glynn, it was very clear they proceeded at law and, therefore, not at admiralty. Whereas in this case, because the DOSA claim is involved, the claim proceeds both through a jury and also reserves its admiralty jurisdiction to the bench. It's very similar to what happened in Snyder v. Whitaker, the Fifth Circuit case that we cited to the court. That's an exact, almost similar situation, two crew members who perished on a vessel that sank and almost the exact same issue comes up. I think that the question before the court that was not there in Glynn but was there in Whitaker v. Snyder is whether the court is seized with admiralty jurisdiction. I think in a Jones Act case where the court proceeds at law, the judge simply does not have that fact-finding power after the case to award prejudgment interest. But in this case, because DOSA is there and because the parties stipulate that it's proceeding in admiralty, the court still has the power. It's seized with the admiralty jurisdiction. It doesn't make Glynn bad law. It just makes Glynn different from the case that proceeded before the court in Guam. Can you address counsel's argument with regard to McDermott? Yes. So specifically with respect to McDermott, Your Honor, I think the law of the land is clear that if you want to have a settlement credit from a settling defendant, you are required to put that defendant on the verdict form, put a line in front of the jury, and have a jury apportion fault. And I think it's very, very clear in this case. And I think it's important because what's being argued before this court is different from what was admitted and conceded to the district court. What's being argued here is we couldn't do it. The jury just couldn't apportion fault. As I understood counsel's argument a little bit better than I did when I went through the brief is that, yes, they made a strategic decision, in a sense, but that was really driven by the fact that it wouldn't have done them any good. In fact, it would just make them look worse had they submitted what I think they originally contemplated, which is special verdict form that contemplated apportionment of fault because the district court would have told the jury anyway that Majestic is just responsible for anything that Don Juan did. That's a little bit broader than what actually happened at the district court. The district court did not say I'm going to impute all the negligence of Majestic Blue, of Don Juan to Majestic Blue. The court said on the issue of knowledge, of privity and knowledge, did Don Juan have some knowledge and would that knowledge be attributable to Majestic Blue is different than saying I'm attributing all of Don Juan's negligence to Majestic Blue. That wasn't before the court. The jury was not instructed on the fact that if Don Juan was found to be negligent, then Majestic Blue would answer for all of that. That was not before the court. What was before the court was whether some of the knowledge that Don Juan had was attributed to Majestic Blue. That's a far narrower issue than to say they are completely, the negligence is just sort of a pass-through thing because that wasn't before the court. I'd like to mention to the court because I do think it's important what Majestic Blue said at the time and what's being said now because what they had said to the court earlier was the reason, and I quote this from docket entry 550 pages 3 and 4, that had Don Juan not settled, the jury would have heard a case against Don Juan and would have been able to determine proportional fault. And the reasoning that they said was, well, Don Juan settled on what they called the eve of trial. It was a few weeks beforehand, and they just weren't able to prepare a case for proportional fault, and that's the reason it didn't go forward. What they say now is something different, which is to say to this court, oh, they couldn't apportion proportional fault when they really told district court they could. We just were so late in the game that we couldn't prepare our case and we didn't submit it. We planned to, but we weren't able to. It's not that proportional fault could not have been apportioned. In fact, it could have been apportioned, and now it never can be apportioned because they simply didn't put the line on the verdict form that would have allowed a jury and then a court like the district court or a reviewing court like the Ninth Circuit to take a look at those percentages of fault and then determine whether a settlement credit is appropriate under McDermott. But by failing to do that, by not putting it there, by saying, listen, we were going to do it, but we couldn't do it, it's lost forever. And they waived it, and I think the court chronicles very specifically in its order, we went over pre-trial, pre-jury instructions, we went through them, we went through the verdict form, they had proposed it, they removed it, they never objected. On the morning before the jury was charged, they filed a motion for a credit before the jury had even been sent back. They had an opportunity again that morning to come to the court and object. They didn't object again, and what the jury ultimately found is that Majestic Blue was 100% liable. And now what they want to do is say to the court, well, we don't want to pay for our liability. McDermott is very clear that the first way to go about this is to put people's percentages on the paper and have a fact finder do that, and ultimately you pay for what you caused. Otherwise, a defendant like this waives its right, doesn't go forward, doesn't put it on, and then tries to get a windfall for its own liability, which is effectively what Majestic Blue is trying to do here. They're trying to say we are 100% liable, but we'd like a credit for our liability based on somebody else's payments, and I think it's improper, and that's what the Supreme Court has said is improper. We heard earlier, I just wanted to make a refining point outside of this settlement thing with regard to prejudgment interest, because there has been an argument recently made and made before the court today about differentiating and distinguishing past damages from future damages, and that their idea that the appellant believes these things have been improperly commingled, and therefore there can't be a determination of prejudgment interest. Recently there was a request of the court to supplement this record with excerpts. The court granted that order, but also made a limiting note that we're not going to listen to issues or new issues that were not raised in your opening brief. I'd like the court to note that this past and future damage issue was never raised in the opening brief by the appellant. It was not briefed by the appellee in response. That issue is waived. It does not appear in Docket Entry 9 here, which is the opening brief, or Docket Entry 16. What has happened is after the opening and response briefs were presented to the court, the appellant came over the top in a reply, raising a brand-new issue. This court in McKay v. Engelson, 558 Fed 3rd 888, which is a Ninth Circuit case in 2009, footnote 5, has addressed these issues of issues not raised in the opening brief, not addressed, and the door certainly was not opened by the appellee. We did not have an opportunity to brief this issue to the court. If the court goes back and looks through the opening brief, you will not find one argument or issue with respect to this past and future thing. It's something that has come up recently. We believe it to be waived. If the court does not consider or allow this type of argument with respect to waiver, future damages in DOSA cases, along with past damages, have been entitled to prejudgment interest. Those cases are actually cited in the Whitaker v. Snyder opinion that's cited to the court, but there are two cases in there specifically. One is called Berrios. It's at 465 Fed 2nd 1168, and one is Stiles, which is at 268 Fed 2nd 406, note 6. And there's also the Saavedra v. Korean Air case, which is at 93rd Fed 3rd 542nd, which is also a Ninth Circuit 1996 case. And so those are the issues, Your Honor, before this court. The judge was seized with the ability. I think we haven't discussed rate yet, and I've only got about 10 seconds to do so. I'll give you an extra minute or two. Thank you, Your Honor. With respect to the rate issue, as this court has mentioned on several occasions, the district court has the discretion to take a look not only at the statutory federal rate but also at the local rate of interest. And in its discretion, and if equities demand, as the court noted in the Columbia Brickworks case, 768 Fed 2nd 1066, which is a Ninth Circuit case, 1985, the court has the discretion to look at the equities of the case and to determine, for instance, in this case, that a 0.25% federal statutory rate is too low and a 6% is, in fact, more in line with a proper rate. The court can look to the local law, and I think the court made a... That's a pretty high rate for the time period that we're talking about. I think that the... Well, I think, Your Honor, if you... I think first you have to start perhaps with a default position that the federal rate and the local rate provide a bracket, regardless of what the numbers are, a bracket of what is reasonable in a particular case, and it should be a presumption that if the court has the discretion to stay within the bracket of the federal rate and the local rate... So the Guam rate was 6%? That's correct, Your Honor. That was a matter of law in Guam? That was a matter of statutory law in Guam. Okay. It was 6%, and so I think there is a default position with respect to the low side and high side and exercising the court's discretion. I think if the court went outside of that, those two brackets, and did something else, then perhaps that presumption goes away and you've got to present some sort of evidence. But I think if the court looked at some of the returns on investment of the Dow since the downfall in 2010 through the date of the judgment, 6% actually is probably not an extremely high rate, considering those circumstances. But those issues weren't before the court,  discretion in this regard. Okay. Thank you. Thank you. All right, I'll make best use of my minute. The court had three legs of jurisdiction on which to stand. One was under Advocacy 1333, one was under Jones Act 1331, and also diversity jurisdiction under Talentire and bringing the action at law. The court did not exercise its 1333 jurisdiction. The only way the court exercises its 1333 jurisdiction is to sit in admiralty. He can impanel a jury, but the jury is an advisory jury. So he did not sit in admiralty. The case was tried under 1331 and 1332, and that's why. Let me ask you this. The pretrial strategic proceedings and everything that takes place, trial briefs and whatnot, is it possible that Majestic waived this whole issue to let it go to the judge? No, because it happened after the trial. In other words, the motion for prejudgment interest was after the trial. There was no mention of prejudgment. If I were to go back and look at the pretrial discussions, I would not find one single iota reference to prejudgment interest. Is that what you're telling me? I believe so, Judge. I believe so. The record is quite large, and I'm not going to make a representation that could get me into trouble, but I don't. I thought he cited the trial brief. There may have been a trial brief that said that, but the case was tried under the pretrial order, not under a trial brief. It was a pretrial order under Rule 16. That's the limits with which you try the case. But does it make any difference that there were certain factual findings made by the court that was then read to the jury, so it's not a case tried solely to the jury, was it? Those facts were found and were read to the jury, and the jury was bound by the limitation facts. I'm not sure if that's under the law of the case. I don't know that the jury. Does that fact make any difference to your argument? That he is still, in Amy Hill v. Majestic Blue, it is still an action at law because the jury is going to trial issues. And he, under a collateral estoppel, I guess, Well, the jury was bound by those factual findings. By collateral estoppel. Majestic Blue was bound to those facts by collateral estoppel. He wasn't trying those facts in that case. He tried those facts in the limitation case. So we're still in an action at law in Hill v. Majestic Blue. We were an action at admiralty in the limitation case. Okay. Thank you, counsel. We appreciate your arguments and the extensive travel that both of you made to come out here. Thank you. It's a very interesting and, unfortunately, very tragic case. For that case, Hill v. Majestic Blue Fisheries is submitted at this time.
judges: Fisher, Paez, Nguyen